UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**<br>378 N. Main Street,<br>Tucson, AZ 85701, and<br><br>**HEALTHY GULF**,<br>935 Gravier Street, Ste 700<br>New Orleans, LA 70130<br><br>   *Plaintiffs,*<br>v.<br><br>**U.S. FISH AND WILDLIFE SERVICE,**<br>1849 C Street NW<br>Washington, DC 20240, and<br><br>**DAVID BERNHARDT**, in his official capacity as Secretary of the U.S. Department of the Interior,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>   *Defendants.* | Case No.:   1:21-cv-107 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

  1. Plaintiffs Center for Biological Diversity (Center) and Healthy Gulf bring this action challenging the U.S. Fish and Wildlife Service's (FWS) failure to develop and implement recovery plans for the frosted flatwoods salamander and reticulated flatwoods salamander (collectively, Salamanders), in violation of the agency's mandatory duty set forth in Section 4(f) of the Endangered Species Act (ESA), 16 U.S.C. § 1533(f)(1).



Katie O'Donnell, U.S. Geological Survey

2. Section 4(f) of the ESA directs that FWS "shall develop and implement plans for the conservation and survival of endangered species and threatened species." *Id*. Yet despite having listed the Salamanders under the ESA more than 20 years ago, FWS has failed to develop and implement recovery plans for the species.

3. The ESA requires recovery plans to organize and coordinate efforts to recover listed species, which would benefit the Salamanders' conservation and survival. In the absence of recovery plans, the Salamanders have continued to dramatically decline since their listing. One of the greatest drivers of Salamander declines, poor habitat management on public lands, would be better coordinated and more successful with recovery planning.

4. FWS's failure to develop and implement recovery plans for the Salamanders is a direct violation of the agency's mandatory duty under Section 4(f) of the ESA, *id.*, and constitutes agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1). This failure also violates FWS's own policy that

recovery plans should be developed within 2.5 years of a final listing. Nat'l Marine Fisheries Serv. & U.S. Fish & Wildlife Serv., Interim Endangered and Threatened Species Recovery Planning Guidance, Version 1.4 at 1.5-2 (July 2018), available at https://www.fws.gov/endangered/esa-library/pdf/NMFS-FWS_Recovery_Planning_Guidance.pdf [hereinafter "Recovery Planning Guidance"].

5. Accordingly, the Center and Healthy Gulf bring this action against FWS to: (1) secure declaratory relief that FWS is violating the ESA by failing to develop and implement recovery plans for the Salamanders; and (2) enjoin FWS to issue final recovery plans for the Salamanders according to a prompt timeline established by the Court.

## JURISDICTION AND VENUE

6. This action arises under the ESA, 16 U.S.C. § 1531 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §§ 2201–2202 (declaratory judgments and further relief), 16 U.S.C. § 1540(c), (g)(1)(c) (action arising under the ESA and citizen suit provision). The Center and Healthy Gulf have properly given notice of their claims under the ESA to FWS in accordance with the ESA's citizen suit provision. 16 U.S.C. § 1540(g)(2)(c).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because Defendants reside in this judicial district and a substantial part of the violations giving rise to the claim occurred in this district. FWS's headquarters in the District of Columbia have the principal role of ensuring the development and implementation of recovery plans for the Salamanders. The Center for Biological Diversity also maintains an office in this judicial district.

3

## PARTIES

8.  Plaintiff Center for Biological Diversity is a national, nonprofit conservation organization that works through science, law, and policy to protect imperiled species and their habitats. The Center has more than 81,000 active members across the country. It is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including Arizona, California, Colorado, Florida, Hawai'i, Idaho, Minnesota, Nevada, New York, North Carolina, Oregon, Vermont, Washington, and Washington, D.C., and in Mexico. The Center and its members are concerned with the conservation of imperiled species, including the Salamanders, through effective implementation of the Endangered Species Act. The Center brings this action on behalf of itself and its members.

9.  Plaintiff Healthy Gulf is a regional nonprofit group incorporated in Louisiana and headquartered in New Orleans, with offices in Florida and Mississippi. Healthy Gulf's purpose is to collaborate with and serve communities who love the Gulf of Mexico by providing research, communications, and coalition-building tools needed to reverse the long pattern of over exploitation of the Gulf's natural resources. Healthy Gulf, its members, and supporters work to protect imperiled species, including the Salamanders, and their habitat in the Gulf of Mexico region. Healthy Gulf brings this action on behalf of itself and its members and supporters.

10. The Center and Healthy Gulf have members with concrete interests in the protection and recovery of the Salamanders and their habitat. The Center's and Healthy Gulf's members and staff have researched, studied, observed, and sought protection for the Salamanders. In addition, staff and members have visited the Salamanders' habitat and observed or sought to observe the species in the wild.

11. The Center's and Healthy Gulf's members derive recreational, scientific, professional, aesthetic, spiritual, and ethical interests in the Salamanders. For example, their members regularly research or recreate in the Salamanders' habitat with the hope of seeing Salamanders and have concrete plans to do so in the future. Members know that the Salamanders are a critical part of their ecosystems and that their loss would diminish those ecosystems and associated species they study and enjoy observing.

12. Defendants' failure to comply with the ESA's nondiscretionary mandate to develop and implement recovery plans for the Salamanders denies the species critical protections that are necessary to protect and recover them. For example, in the absence of recovery plans, the Salamanders' crucial pine flatwoods and pine savanna habitat has continued to degrade without proper management. Recovery plans would, among other things, help guide the management of the Salamanders' habitat on public lands

13. The Center's and Healthy Gulf's members and staff are injured by Defendants' failure to develop and implement recovery plans for the Salamanders, which denies the species significant protections and harms their survival and recovery. The Center, Healthy Gulf, and their members' interests will continue to be harmed until Defendants develop and implement recovery plans for the Salamanders. These actual, concrete injuries presently suffered by the Center, Healthy Gulf, and their members are directly caused by Defendants' inaction and will continue to occur unless this Court grants the requested relief.

14. The relief sought herein—an order compelling Defendants to develop and implement recovery plans for the Salamanders by a date certain—would redress these injuries by supporting the Salamanders' recovery before they decline further toward extinction. Conserving and recovering the Salamanders and their habitat would mean that the Center, Healthy Gulf, and

their members can continue pursuing educational, scientific, recreational, aesthetic, and spiritual interests in the them. The Center, Healthy Gulf, and their members have no other adequate remedy at law.

15. Defendant U.S. Fish and Wildlife Service is a federal agency within the Department of the Interior. The Secretary of the Interior has delegated his authority to administer the ESA to FWS for non-marine wildlife. 50 C.F.R. § 402.01(b). This authority encompasses recovery planning for the Salamanders.

16. Defendant David Bernhardt is the Secretary of the Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including recovery planning. Plaintiffs sue Secretary Bernhardt in his official capacity.

## STATUTORY AND REGULTORY BACKGROUND

17. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Congress enacted the ESA, in part, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The ESA defines "conservation" as the "use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary." *Id.* § 1532(3). Accordingly, the ultimate goal of the ESA is

not only to temporarily prevent the extinction of threatened and endangered species but also to recover these species to the point where they no longer need ESA protection.

18. The ESA requires FWS to protect imperiled species by listing them as either "endangered" or "threatened." *Id*. § 1533(a)(1). The ESA defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

19. As part of the statutory scheme to conserve endangered and threatened species, Section 4(f) of the ESA directs that FWS "shall develop and implement [recovery] plans . . . for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless [it] finds that such a plan will not promote the conservation of the species." *Id*. § 1533(f)(1).

20. When prioritizing species for recovery plans, FWS "shall, to the maximum extent practicable . . . give priority to those endangered or threatened species . . . that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction or other development projects or other forms of economic activity." *Id.* at § 1533(f)(1)(A).

21. When preparing recovery plans, FWS "shall, to the maximum extent practicable . . . incorporate . . . such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," as well as "objective, measurable criteria which, when met, would result in a determination . . . that the species be removed from the list." *Id.* § 1533(f)(1)(B)(i)–(iii).

22. Recovery is the process of restoring and safeguarding listed species and their ecosystems to the point that ESA protections are no longer needed. While a variety of actions may be necessary to achieve the goal of recovery, "without a plan to organize, coordinate, and prioritize the many possible recovery actions, the effort may be inefficient or even ineffective." Recovery Planning Guidance at 1.5-2. Therefore, a recovery plan is one of the most important tools to ensure sound scientific and logistical decisionmaking throughout the recovery process. *Id.*

23. Reinforcing the importance of recovery plans, Congress provided for public participation in the development and amendment of the plans. For example, prior to final approval of any "new or revised recovery plan," FWS must "provide public notice and an opportunity for public review and comment on such plan," 16 U.S.C. § 1533(f)(4), and "shall consider all information presented during the public comment period prior to approval of the plan," *id.* § 1533(f)(5). FWS must also "report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement recovery plans for all species listed [under the ESA] and the status of all species for which such plans have been developed." *Id.* § 1533(f)(3).

24. Because recovery plans are an important part of recovering species listed under the ESA, FWS's internal recovery planning guidelines provide that final recovery plans "should be completed within 2.5 years of listing." Recovery Planning Guidance at 1.5-2. To meet this timeframe, "drafts should be completed within 1.5 years of listing." *Id.*

25. The ESA's citizen suit provision provides for judicial review where FWS has failed to perform a mandatory duty under ESA Section 4. 16 U.S.C. § 1540(g)(1)(C). The APA

provides the standard of review. 5 U.S.C. § 706(2)(A). Additionally, under the APA, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

## FACTUAL BACKGROUND

### The Frosted Flatwoods Salamander and Reticulated Flatwoods Salamander

26. The frosted flatwoods salamander (*Ambystoma cingulatum*) and reticulated flatwoods salamander (*Ambystoma bishopi*) are two closely related species of mole salamander recognizable by their black to chocolate-black bodies with light-gray, cross-banded patterning.

27. The two species, pictured below, are difficult to visually discern and often require genetic or blood tests to identify them.



Frosted flatwoods salamander, Katie O'Donnell, U.S. Geological Survey



Reticulated flatwoods salamander, Jeromi Heffner, U.S. Geological Survey

9

28. Because of their similarities, the frosted and reticulated flatwoods salamanders were once considered to be one species, the "flatwoods salamander," until scientific study demonstrated they were two distinct species.

29. While the Salamanders once jointly ranged throughout the coastal plain of the southeastern United States, their combined range has decreased by 89% over the last few decades. Both species now cling to existence in few, scattered locations across their former range, mostly on federal and state lands. The frosted flatwoods salamander currently exists in nine known populations with recent observations in Liberty and Wakulla counties, Florida; Liberty County, Georgia; and Berkeley County, South Carolina. The reticulated flatwoods salamander currently exists in six known populations located in Santa Rosa and Okaloosa counties, Florida, and Miller County, Georgia.

30. The most significant threat for both Salamanders is ongoing habitat degradation and destruction, primarily from the suppression of natural fires and absence of appropriately timed prescribed fires. Fire maintains the ecological health of the pine savannas and ephemeral (seasonally flooded) wetlands the Salamanders require to complete their life cycle. Most critically, without fire, ephemeral wetlands can become overgrown and unsuitable for the Salamanders to breed.

31. The Salamanders are also threatened by conversion of natural pine forests and savannas to intensively managed pine plantations or other human developments that are unsuitable for the Salamanders to inhabit. Other threats include drought, disease, off-road vehicle use, pesticide use, and effects from climate change including increased drought, storms of increasing intensity, and sea level rise.

32. Because the Salamanders exist in small, isolated populations, they are particularly vulnerable to catastrophic events that could negatively affect the entire population.

**The Salamanders' Decades-long Struggle to Survive Without Recovery Plans**

33. In 1999, FWS listed the "flatwoods salamander" as a threatened species. Endangered and Threatened Wildlife and Plants; Final Rule to List the Flatwoods Salamander as a Threatened Species, 64 Fed. Reg. 15,691 (Apr. 1, 1999).

34. FWS did not designate critical habitat for the Salamanders at the time of listing, as the ESA requires. But in response to a lawsuit filed by the Center and partners, FWS published a rule proposing critical habitat in 2007.

35. FWS also did not develop and implement a recovery plan for the Salamanders.

36. Ten years later in 2009, after determining the flatwoods salamander was in fact two species, FWS reclassified the reticulated flatwoods salamander as an endangered species, maintained the frosted flatwoods salamander as a threatened species, and designated critical habitat for both species. Endangered and Threatened Wildlife and Plants; Determination of Endangered Status for Reticulated Flatwoods Salamander; Designation of Critical Habitat for Frosted Flatwoods Salamander and Reticulated Flatwoods Salamander, 74 Fed. Reg. 6,700 (Feb. 10, 2009).

37. Six more years passed with no development or implementation of recovery plans for the Salamanders.

38. In March 2015, the Center and Gulf Restoration Network (now Healthy Gulf) submitted a letter to FWS noticing their intent to sue the agency under the ESA for failing to develop and implement recovery plans for the Salamanders.

11

39. In May 2015, FWS responded to the notice letter with a review of the agency's "work toward recovery planning" and an offer to keep the Center and Healthy Gulf informed of the agency's progress. FWS did not provide a date by which it would finalize recovery plans for the Salamanders.

40. Five months later in October 2015, FWS published a review of the reticulated flatwoods salamander's status in which it conceded that "[n]either a draft recovery plan nor an outline has been written for this species."

41. In December 2015, FWS sent a second response to the Center and Healthy Gulf's notice letter that included a projected schedule. FWS indicated that the field office working on the recovery plans for the Salamanders would submit final drafts to FWS's regional office in roughly 10 months, by October 2016.

42. Yet more than four years passed and FWS still had not developed and implemented final recovery plans for the Salamanders.

43. Although in September 2019, FWS published a review of the frosted flatwoods salamander's status in which it stated that a "recovery plan is being drafted at the time of this writing," more than half a year passed with no recovery plans for either Salamander.

44. In June 2020, the Center and Healthy Gulf sent a second letter noticing FWS of their intent to sue under the ESA for the failure to develop and implement recovery plans for the Salamanders.

45. After receiving no response for nearly five months, the Center contacted FWS to determine whether the agency had responded to the notice letter.

46. On December 1, 2020, FWS sent a response letter to the Center and Healthy Gulf's notice letter stating that "the draft recovery plans are currently under review for publication of the notice of their availability in the Federal Register."

47. As of the date of this Complaint, FWS has not published draft recovery plans for the Salamanders.

48. Therefore, more than 20 years after the Salamanders were first listed under the ESA, FWS has failed to develop and implement final recovery plans for the Salamanders.

49. Based on FWS's long history of broken commitments and ongoing failure to develop and implement final recovery plans for the Salamanders, the Center and Healthy Gulf have little reason to believe final plans are imminently forthcoming.

50. Meanwhile, in the absence of these plans, the Salamanders have continued to decline.

51. In FWS's most recent 2019 review of the frosted flatwoods salamander's status, the agency found that populations had decreased from 25 known populations in 2009 to only 9 currently known populations. Given this ongoing decline, FWS now recommends reclassifying the frosted flatwoods salamander from threatened to endangered, which means the species is now in clear danger of extinction.

52. FWS's most recent 2015 review of the reticulated flatwoods salamander's status also shows the species is decreasing. Of the 20 reticulated flatwoods salamander populations known in 2009, only 6 populations are currently known to exist.

53. If these trends continue for the Salamanders, their future will likely end in extinction.

54. On the other hand, the Salamanders would benefit from the development and implementation of final recovery plans. FWS has given both Salamanders a recovery priority number of 2, which indicates that although the species are critically imperiled, they have "high recovery potential."

55. The development and implementation of comprehensive recovery plans would be particularly helpful in coordinating habitat management efforts to address one of the greatest threats to the Salamanders—habitat degradation due to fire suppression and poorly executed prescribed fires.

56. The Salamanders require the full protections of the ESA—including the development and implementation of final recovery plans—if they are to survive and recover.

## PLAINTIFFS' CLAIMS FOR RELIEF

### First Claim for Relief

**Violation of Endangered Species Act Section 4(f), 16 U.S.C. § 1533(f):
Failure to Develop and Implement Recovery Plans**

57. Plaintiffs re-allege and incorporate by reference the allegations made in all preceding paragraphs.

58. Under Section 4(f) of the ESA, FWS has a non-discretionary duty to "develop and implement" recovery plans for the "conservation and survival" of listed species. 16 U.S.C. § 1533(f)(1).

59. Despite having listed the Salamanders in 1999 and revised their listing designations in 2009, FWS has failed to develop, publish, and implement recovery plans for the species.

60. Because FWS never developed recovery plans for the Salamanders, it has failed to "develop and implement" plans for the "conservation and survival" of the Salamanders, in violation of ESA Section 4(f). *Id.* § 1533(f)(1).

## Second Claim for Relief

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1): Agency Action Unreasonably Withheld or Unlawfully Delayed

61. Plaintiffs re-allege and incorporate by reference the allegations made in all preceding paragraphs.

62. Under the APA, a reviewing court has the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

63. Completion of recovery plans for the Salamanders under the ESA constitutes discrete action that FWS was required to take under 16 U.S.C. § 1533(f).

64. Agency policy provides that FWS should complete a final recovery plan within two and a half years of a species' listing under the ESA.

65. More than 20 years after listing the Salamanders under the ESA and more than 10 years after revising their listing status, FWS has failed to develop and implement recovery plans for the species, which are critically in danger of extinction.

66. FWS's failure to develop and implement recovery plans for the Salamanders for more than two decades is unlawful and unreasonable because FWS has not determined that such plans would not promote the conservation of the Salamanders.

67. FWS's continued failure to develop and implement recovery plans for the Salamanders constitutes "agency action unlawfully withheld or unreasonably delayed" under the APA. 5 U.S.C. § 706(1).

**REQUEST FOR RELIEF**

The Center and Healthy Gulf respectfully request that this Court grant the following relief:

(1) Declare that FWS violated its mandatory duty under Section 4(f) of the ESA, 16 U.S.C. § 1533(f), and the APA, 5 U.S.C. § 706(1), by failing to develop and publish recovery plans for the Salamanders;

(2) Order FWS to comply with Section 4(f) of the ESA, 16 U.S.C. § 1533(f)(1), by developing and publishing a recovery plan for the Salamanders according to a prompt timeline established by the Court;

(3) Award the Center its reasonable attorneys' fees and costs associated with this action pursuant to 16 U.S.C. § 1540(g)(4) and/or 28 U.S.C. § 2412(d); and

(4) Grant such other and further relief as the Court deems just and proper to remedy FWS's violations of law.

DATED: January 13, 2021

Respectfully submitted,

*/s/ Elise Pautler Bennett*
ELISE PAUTLER BENNETT
D.C. Bar No. FL0018
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (561) 568-6740
Fax: (520) 623-9797
Email: ebennett@biologicaldiversity.org

*/s/ Jaclyn Lopez*
JACLYN LOPEZ
D.C. Bar No. FL0017
Center for Biological Diversity
P.O. Box 2155

St. Petersburg, FL 33731
Telephone: (727) 490-9190
Fax: (520) 623-9797
Email: jlopez@biologicaldiversity.org

*Counsel for Plaintiffs Center for Biological Diversity and Healthy Gulf*

17